## TAX COMMISSION v LIVINGOOD

Ohio Appeals, 1st Dist, Hamilton Co

Decided Feb 2, 1931

W. H. Middleton, Jr., Waverly, for Tax Commission, plaintiff in error.

Taft, Stettinius & Hollister, Cincinnati, for Livingood, Exr, defendant in error.

**184**

HAMILTON, J.

The Tax Commission in this error pro-
ceeding presents two questions: First: Was
the Probate Court correct in exempting the
bequest of the residuary estate to the
Thomas J. Emery Memorial, as an institu-
tion for purposes only of public charity un-
der §5334 GC? Second: It is contended that
§5334-1 GC, containing what is known as
the "reciprocal law" is violative of §7 of
**Article XII and §2 of Article I of the Con-
stitution of Ohio.**
We will first consider the question of
the exemption of the bequest of the residu-
ary estate under §5334 GC. The pertinent
part of that section is as follows:

The succession of any property passing
to or for the use of * * * an institution for
purposes only of public charity, carried on
in whole or in substantial part within this
state, shall not be subject to the provisions
of the preceeding sections of this subdi-
vision * * * of this chapter. * * *

The Thomas J. Emery Memorial is ad-
mittedly an institution. The question is:
Is it an institution "for purposes only of
public charity" within the language of the
statute? This requires a consideration of
Item XII of the will of Mary M. Emery,
which is as follows:

"All the rest, residue and remainder of my
property and estate, real, personal and
mixed, of whatsoever kind and wheresoever
situated, of which I shall die, seized or pos-
sessed or which I shall be entitled to dis-
pose of by appointment or otherwise at the
time of my death, and including any of the
foregoing legacies and devises which may
have lapsed, I do give, devise and bequeath
to Isabella F. Hopkins, Charles J. Livingood,
Frank H. Nelson, Morrison R. Waite and
Robert A. Taft, the survivors or survivor of
them, and their successors, in Trust, to
create and endow, or if already created,
then to endow, the Thomas J. Emery Me-
morial, such Memorial to be my residuary
legatee and devisee.

The trust fund shall be kept invested
by my said Trustees, and their successors in
said trust, and the income therefrom shall
be used for the physical, social, civic and
educational betterment of residents of the
United States, preferably those in the State
of Ohio, on humanitarian lines, but I au-
thorize said Trustees, and their successors
in said trust from the principal of the said
trust fund to purchase real estate and to
erect such building or buildings as in their
opinion may from time to time be needed
for the purposes of this trust. The said
trustees may also make expenditures for
disseminating such information, evidence
and argument, as they may think neces-
sary or desirable in order to secure efficient
Government, State or Municipal action for
the object of the trust.

The general purpose of the Memorial shall
be to secure a Citizenry which will be more
sane, sound and effective because of more
satisfactory initial conditions of environ-
ment and education.

I direct that there shall, at all times, be
five Trustees of this fund, and that if any
individual above named as Trustee shall at
any time fail to qualify, decline, die, resign,
be removed or otherwise be incapable of
acting as Trustee hereunder, the vacancy
or vacancies so created shall be filled by
written appointment by the remaining
Trustees.

I desire that such Memorial shall be kept
a separate and distinct Memorial, and not
be merged with any other, or placed under
the control or direction, in any manner, of
any other Board, public or private, or of
any institution which now exists or may
hereafter be created and shall not be under
any joint control with any other board or
institution.

Provided, however, that my said Trustees
may in their discretion cause the said
Memorial to be incorporated, and in such
event it is my desire that there shall at

all times be at least five Directors of the corporation so formed."

The Thomas J. Emery Memorial was incorporated as a corporation not for profit. It was organized some two and a half years prior to Mrs. Emery's death. The purpose clause in the articles of incorporation reads as follows:

"Third The purpose for which the corporation is organized is as follows: To bring about the physical, social, civic and educational betterment on humanitarian lines of residents of the United States, and preferably of those residing in the State of Ohio: To take such steps as shall be calculated to produce a citizenry which will be more sane, sound, and effective because of more satisfactory conditions of environment and education; to improve the physical, mental and moral condition of humanity, and generally to advance charitable and benevolent objects; to extend financial or other aid or assistance to such institutions used exclusively for charitable purposes as are now or may hereafter be engaged in furthering the purposes above named or either of them without gain or profit to their members, stockholders, trustees or directors, and to establish, promote, maintain and endow in whole or in part any such institution; and incidentally to the said main purpose the corporation shall have power to erect, manage and operate a building or buildings; to acquire by deed, devise, bequest, gift, purchase, or otherwise real and personal property, and to hold, invest, reinvest, manage and dispose of the same; and to do all other things necessary or incidental to the said purposes of any of them."

While the purpose clause does not determine the character of the purpose as declared in the will, it does have a bearing on the intention of the testatrix, since the same was incorporated more than two years prior to her death. She undoubtedly knew of the purpose clause and approved of the same as being in conformity with her intention under the will.

It is argued that the rule of construction in an application for exemption from taxation requires a strict construction of the exemption statute.

Counsel for the estate urges that there is no reason for strictness, that the splendid objects to be attained under the charity would call for liberality in determining its character. We find no difficulty in arriving at the conclusion hereinafter announced

either from a liberal or strict interpretation. The provisions of Item XII of the will seem to us to be so clearly expressed that no other conclusion can be arrived at, but that it was so intended, and is a broadly expressed purely public charity.

It is argued by counsel for the Tax Commission that the discretion given to the Trustees, under which they might render assistance to an individual or for a specific thing, destroys its public character. The answer to this is, that no public charity could possibly be dispensed generally without resulting in benefit to individuals or single institutions. The charity to be bestowed through the Memorial is as comprehensive as humanitarian considerations; it is as wide as the states; and, that a substantial part of the charity to be bestowed is within the State of Ohio is indicated.

When she says in the provision of her will: "and the income therefrom shall be used for the physical, social, civic and educational betterment of residents of the United States, preferably those in the States, preferably those in the State of Ohio, on humanitarian lines, * * *" her preference is expressed for residents of the State of Ohio, and this is binding upon the Trustees. That they are so administering the trust, recognizing this injunction to prefer the residents of the State of Ohio, is indicated by the activities of the Trustees, set forth in the agreed stipulation of facts.

Counsel for the Tax Commission relies largely on the case of **Tax Commission v Paxon, et, 118 Oh St, 36.** We are of the opinion that the Paxon case is in no wise determinative of the question here. The trust provision in the will under consideration in the Paxon case declared for certain reasons: "I desire to create a fund from which members of his profession (Dr Wilson's) may be compensated for alleviating the suffering of the unfortunate, needy, afflicted and thus rendering a service which he in his lifetime took great pleasure in rendering personally." Further on in the will, the testatrix authorized and empowered the trustees, if they should find "in their judgment, it would best subserve the objects and purpose of this bequest, they may expend any part of, or all of said fund * * * in the erection of said hospital." This was the extent of the provision of this charity. It was given strictly for private charity, to create a fund for the benefit of doctors, and was not of a public character.

There is a wide difference between creating a charity for compensating the medical profession and one created to be "used for the physical, social, civic and educa-

tional betterment of residents of the United States, preferably those in the State of Ohio, on humanitarian lines, * * *" and "to secure a citizenry which will be more sane, sound and effective because of more satisfactory initial condition of environment and education."

The language of the will is so clear it seems unnecessary to discuss the proposition further.

Our conclusion is, that the bequest of the residuary estate to the Thomas J. Emery Memorial is a bequest to an institution "for purposes only of public charity," and was properly exempted under §5334 GC.

This conclusion makes it unnecessary to consider the second proposition as to the constitutionality of §5334-1, GC.

The judgment of the Court of Common Pleas of Hamilton County, affirming the finding of the Probate Court as to the exemption is affirmed.

CUSHING, PJ, and ROSS, J, concur.