In the Matter of O. Arthur STIENNON and Dolores Stiennon, Debtors.

FIRST WISCONSIN NATIONAL BANK OF MADISON, Plaintiff,

v.

O. Arthur STIENNON, Dolores Stiennon, Jerry J. Armstrong, Trustee, M & I Bank of Hilldale and Isaksen, Lathrop, Esch, Hart & Clark Law Offices, Defendants.

Adv. No. 86–0078–7.

United States Bankruptcy Court, W.D. Wisconsin.

May 22, 1987.

Roy L. Prange, Jr., Ross & Stevens, S.C., Madison, Wis., for plaintiff.

Jerry J. Armstrong, Madison, Wis., Trustee.

Ken Axe, Isaksen, Lathrop, Esch, Hart & Clark, Madison, Wis., for defendants.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

Schroer Hardware Lumber Co. ("Schroer") drew a check for $10,000.00 payable to O. Arthur Stiennon. On or about January 16, 1986, Stiennon deposited the check in an account at the First Wisconsin National Bank of Madison ("First Wisconsin"). Before the check cleared the bank permitted Stiennon to withdraw $10,-000.00 from the account. Stiennon deposited the $10,000.00 in a trust account held by his attorney.

Schroer issued a stop payment order to its bank which in turn refused to honor the check when presented by First Wisconsin. On February 6, 1986, the check was returned to First Wisconsin which charged back the amount of the check against Stiennon's account, leaving a negative balance of approximately $8,600.00. The bank thereafter initiated this adversary proceeding seeking a determination that the sum of $8,616.76 held in Stiennon's attorney's trust account is the property of First Wisconsin.

A. *The money in the attorney trust account is property of the debtor's bankruptcy estate.*

■ Section 541 of the Bankruptcy Code (11 U.S.C. § 541) creates an estate which is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. As of the commencement of the present case, the money in the attorney's trust account was held in trust expressly for the debtor. As stated in WIS.STAT. § 701.05(3) (1985–86), the interest of the beneficiary of a private trust is an equitable interest.[1] Absent an exception to section 541, there can be no question that the trust funds were included in the debtor's bankruptcy estate.

The bank contends, however, that the trust account never became property of the estate, citing *In re Morse*, 8 B.R. 990 (D.N. J.1981). *Morse* was a dispute over a reissued check, and is distinguishable from the present case. In *Morse*, the debtor payees would have received double payment if they had been allowed to cash the reissued check. In the present case, Stiennon received a contract payment from Schroer in the form of a check. He had both the legal and equitable interest in the money paid on that check until it was deposited in his attorney's trust account and retained an equitable interest thereafter. There was never an issue of Stiennon receiving double compensation as in *Morse*.

---

1. *See Sutherland v. Pierner,* 249 Wis. 462, 24 N.W.2d 883 (1946) (the beneficiary of a trust has an equitable interest in the trust property); *In re Mueller Travel Agency,* 56 Wis.2d 207, 201 N.W.2d 589 (1972) (legal title to trust property is in trustee). *See also* Restatement (Second) Trusts § 2, comment (f) (1959) (discusses bifurcation of legal and equitable interests in trust property).

Alternatively, First Wisconsin contends that the court should impose a constructive trust in its favor. Thereby, the equitable interest in the funds would reside in the bank leaving the debtor with bare legal title. As stated in *United States v. Whiting Pools*, 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983), "Congress intended to exclude from the bankruptcy estate property of others in which the debtor had some minor interest such as a lien or bare legal title." *See also In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir.1985).

■ A constructive trust is an equitable remedy that a court may use only if the grounds exist for its imposition. G. Bogert, *Law of Trusts*, §§ 77–78, at 287 (1973); D. Dobbs, *Remedies*, § 4.3, at 245–48 (1973). The party requesting the trust has the burden of proving that the grounds exist. The quantum of proof must be at least a preponderance of the evidence although many cases and commentators suggest the evidence must be "clear and convincing." G. Bogert, *Law of Trusts*, § 78 at 291 n. 25; Restatement (Second) Trusts, § 40(d) (1959); G. Bogert, *Trusts and Trustees*, § 472 at 44–51 (1978); 5A. Scott, *Law Of Trusts*, (3rd ed.) § 462.6 (1969).

■ One of the elements generally necessary for the invocation of equity is that legal remedies are inadequate.[2] However, the Court of Appeals for the Seventh Circuit has held that the party requesting the constructive trust need not prove the inadequacy of the legal remedy. *Suess v. Stapp*, 407 F.2d 662, 664 (7th Cir.1969). Nonetheless, First Wisconsin must prove the other elements necessary for imposition of a constructive trust, including: (1) unjust enrichment of the debtor, and (2) wrongful or unconscionable conduct on the

part of the debtor.[3] First Wisconsin has failed to meet its burden of proof.

■ There was no unjust enrichment. Stiennon withdrew money credited to his account by the bank, which absent bankruptcy First Wisconsin would have been entitled to recover in full. *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609, 614 (1973); *State v. Williams*, 134 Ariz. 411, 656 P.2d 1272, 35 UCCRS 920, 924 (1982). *See also* WIS. STAT. § 404.201(1) (any settlement given for an item is provisional until settlement becomes final). However, when Stiennon filed for bankruptcy all collection activity by First Wisconsin was stayed. Creditors, including First Wisconsin, had their rights, both procedural and substantive, modified to assure an equitable distribution of Stiennon's assets. Although Stiennon's bankruptcy estate retains the subject funds pending the outcome of this bankruptcy case, they are retained solely to assure an equitable distribution. Proceeds of any other unsecured credit in the hands of the debtor at the time of bankruptcy are similarly treated. The funds will be distributed as provided in the Bankruptcy Code. No enrichment of Stiennon has occurred. To the contrary, if First Wisconsin were permitted the relief it seeks it would be preferred over other general creditors and enriched beyond its entitlement under the Code.

■ Nor has wrongful or unconscionable conduct on the part of Stiennon been proved. An example of such conduct might be presented if Stiennon had withdrawn the funds with knowledge that the check would be dishonored and with intent that First Wisconsin would suffer the loss. However, nowhere does the bank allege any knowledge of the dishonor or negative intention on the part of Stiennon. In fact,

---

2. Scott in his treatise on trusts states that a constructive trust should not be imposed on money held by the defendant when a remedy at law is adequate. 5A. Scott, *Law Of Trusts*, § 462.3. *See In re National Benefit Association*, 72 S.D. 23, 29 N.W.2d 81 (1947). *Cf.*; G. Bogert, *Trusts and Trustees*, § 472, at 37 & nn. 65 and 67.

3. *See First National Bank of Appleton v. Nennig*, 92 Wis.2d 518, 539, 285 N.W.2d 614, 625 (1979), "unjust enrichment in itself is not sufficient to invoke the doctrine of constructive trust, but some additional factor must be shown, such as actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or any other form of unconscionable conduct."

First Wisconsin admits that the funds were withdrawn in good faith and in accordance with commercially reasonable banking practices. There is no suggestion that Stiennon knew or should have known Schroer would stop payment on the deposited check.

B. *The funds in the attorneys' trust account are not proceeds from the dishonored check and, therefore, are not subject to a security interest in favor of the plaintiff.*

■ WIS.STAT. § 404.208(1) (1985–86) provides in part that "[a] bank has a security interest in an item and any accompanying documents or the proceeds of either: (a) in the case of an item deposited in an account to the extent to which credit for the item has been withdrawn or applied." Subsection (c) provides that "the security interest has priority over conflicting perfected security interests in the item, accompanying documents or proceeds."

Relying on WIS.STAT. § 404.208 First Wisconsin argues that the funds advanced as a provisional credit to Stiennon's account are proceeds of the check. If they are, First Wisconsin has a first priority security interest in the funds. The case law on this issue is sparse. *See Realty Growth Investors v. Commercial and Industrial Bank of Memphis, Tennessee,* 370 So.2d 297, 26 UCCRS 1259 (Ala.Ct.App. 1979), *cert. denied* 370 S.2d 306; *Cooper v. Union Bank,* 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973); *Schwab v. Walden Savings Bank,* 109 Misc.2d 929, 441 N.Y. S.2d 195, 32 UCCRS 1561 (1981).

Generally, when a depository bank advances funds to the payee, the depository bank obtains a security interest in the item (*i.e.,* the check) to the extent of the advance.[4] The check itself is collateral for the depository bank's security interest.[5] Proceeds are whatever is received for the sale, exchange, collection or disposal of col-

lateral.[6] Therefore, no proceeds are created when a check is presented for final payment and subsequently dishonored, because the check is not exchanged or disposed of for money or any other thing of value. Accordingly, a provisional credit on a deposited check is not "proceeds." A depository bank cannot have a security interest in the money advanced on a deposited check because the bank does nothing to convert its collateral into those funds. *See Realty Growth Investors,* 370 So.2d 297, 26 UCCRS at 1264–65; *Cooper,* 107 Cal.Rptr. at 6, 507 P.2d at 614.

What is generally the law under the U.C.C. is also the law of Wisconsin.[7] A check is an item and the depository bank obtains a security interest in that item when it advances money to the payee before final payment is made on the check.[8] The item, not the cash advance to the depositor, is subject to a security interest and is "collateral" as defined in WIS.STAT. § 409.105. When in the chain of bank collections the depository bank is in turn credited for the check it receives "proceeds" as defined in WIS.STAT. § 409.306. In this case the collateral, the check, was never converted to proceeds. The check was moved toward collection from the depositor to the drawee bank. That journey ended when the drawee bank refused to make final payment. The check was returned with no proceeds ever having been created to which First Wisconsin's security interest could attach.

The *Schwab* case which seems to hold that funds provisionally credited on the deposit of a check are "proceeds" has been criticized by the only commentator to directly address the issue. Professor Hawkland wrote:

Thus, whatever is received in exchange for the item is considered proceeds and is subject to the bank's security interest.[3]

Note 3 contains the following:

Note that when § 4–208 refers to 'proceeds', it is referring to proceeds re-

---

4. U.C.C. § 4–208(1) (1977).

5. U.C.C. § 9–105 (1981).

6. U.C.C. § 9–306 (1981).

7. Wisconsin has adopted the U.C.C. and various of its revisions. WIS.STAT. chs. 401–409.

8. WIS.STAT. §§ 404.104(1)(g) and 404.208 (1985–86).

ceived in exchange for the item after it is taken by the bank. The money paid out or advanced by the bank to the customer should not be considered proceeds to which the bank's security interest is attached. *But see Schwab v. Walden Savings Bank,* 109 Misc.2d 929, 441 N.Y. S.2d 195 (1981) (incorrectly holding that funds paid depositor for checks are proceeds).

*5 Hawkland, Uniform Commercial Code Series,* § 4–208:01 (1984).

Because the funds advanced to Stiennon on deposit of the Schroer check are not proceeds there is no need to address the issue of whether they can be traced to the attorney's trust account. First Wisconsin has no claim to those funds except as a general creditor of Stiennon. Therefore, this adversary proceeding must be dismissed.